UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY RIDDLE, | ) | Case No. 4:03 CV 0670 |
| | ) | |
| Petitioner, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| JIM PETRO,[1] | ) | |
| OHIO ATTORNEY GENERAL, et al., | ) | |
| | ) | |
| Respondents. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner, Jeffrey Riddle, is a federal prisoner who has filed a counseled petition under 28

U.S.C. §2254 on April 11, 2003 challenging his convictions in the Court of Common Pleas for

Mahoning County for engaging in a pattern of corrupt activity, aggravated murder, conspiracy to

commit aggravated murder, attempted murder, conspiracy to commit murder, felonious assault with

several convictions enhanced by the firearm use penalty.   Riddle was subjected to multiple

sentences cumulating in life imprisonment with parole eligibility after 20 years.  The state sentence

was ordered to run concurrently with the prior federal sentence.  Prior to the trial in state court,

Riddle was tried and convicted during March 1999 in the United States District Court for the

Northern District of Ohio in Case 4:97 CR 385,  for the crimes of racketeering activity, murder,

---

[1] Riddle has named the State of Ohio as respondent in his petition.  However, *Rules Governing §2254 Cases in the United States District Courts,* Rule 2(b) provided in pertinent part:

> **Applicants subject to future custody –** if applicant is not presently in custody pursuant to the state judgment against which he seeks relief but may be subject to such custody in the future . . . the officer having present custody of the applicant and the attorney general of the state in which the judgment which he seeks to attack was entered shall each be named as respondents.

The proper party respondents are thus Jim Petro, the Attorney General for the State of Ohio, and Michael Pugh, Warden of the United States Penitentiary at Allenwood.

4:03 CV 0670                                    2

kidnapping, violent crimes in aid of racketeering in violation of 18 U.S.C. §1959(a)(1) and (2).  On

March 12, 1999 he was sentenced for life without provision for release plus 3 years supervised

release (Docket no. 671 in Case No. 4:97 CR 385-5).

With regard to his June 22, 1999 state conviction, Riddle commenced a direct appeal (*State

v. Riddle*, 2001 WL 1647211 (Ohio App. 7 Dist.)) and prosecuted his appeal to the Ohio Supreme

Court without success.  See *State v. Riddle*, 95 Ohio St.3d 1422, 766 N.E.2d 162 (Table April 17,

2002).  This was then followed by his timely federal petition under 28 U.S.C. §2254 filed on April

11, 2003.

Respondent, Ohio Attorney General Jim Petro, argued that the petition was a mixture of

exhausted and unexhausted claims.  In response Riddle moved for, and was granted, a stay of this

federal petition on March 30, 2004 while he returned to state court pursuant to *Griffin v. Rogers*, 308

F.3d 647 (6th Cir. 2002) and *Hargrove v. Brigano*, 300 F.3d 717 (6th Cir. 2002), to present any

unexhausted claims.  (See Docket Nos. 21, 22).  On February 5, 2006 Riddle returned to prosecute

this petition by filing his traverse and brief plus exhibits (See Docket Nos. 23 through 25).  The

undersigned finds Riddle has now exhausted his grounds for federal review.

Ground One:          Fifth, Sixth and Fourteen Amendments.

Facts:               Petitioner was charged and convicted in a state court
                     based on identical charges which were filed in a
                     federal court.  This was a sham prosecution and it was
                     a cover for a previous federal prosecution.
                     Petitioner's court-appointed counsel fails to raise this

4:03 CV 0670                                    3

issue and petitioner was also denied effective
assistance of counsel in the record.

The first ground contains two arguments: double jeopardy and ineffective assistance of trial counsel.  The issue of double jeopardy shall be addressed first.  The first argument raises the claim of violation of double jeopardy.  The state appellate court found that the general rule applied that the doctrine of dual sovereignty permits successive prosecution by separate sovereigns.  See *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d. 387 (1985); *State v. Fletcher*, 26 Ohio St.2d 221, 55 O.O.2d 464, 271 N.E.2d 567 (1971).  The state appellate court also scrutinized Riddle's arguments for sham prosecution made under *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) for the proposition that the state conviction for engaging in a pattern of corrupt activity was a sham prosecution from the prior federal RICO prosecution which also had resulted in conviction.

For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2).   A district court has very restricted congressionally granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).  The extent of permissible federal review of state convictions as set forth as follows in the statute:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to

4:03 CV 0670                                    4

> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable
> application* of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding
> (emphasis supplied).

The phrases "contrary to" and "unreasonable application" are not the same.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).  Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ.  *Id.*  The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72, 123 S.Ct. at 1172; *Williams v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 123

4:03 CV 0670                                        5

S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).  This includes both the state court's refusal to extend and its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529 U.S. at 407.

The state appellate court began its finding stating that *Bartkus*, "held a successful state court prosecution after an acquittal on federal charges does not violate due process."  Riddle, 2001 WL 1647211*3.  This is a well-established rule.  See *U.S. v. Wheeler*, 435 U.S. 313, 317, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Abbate v. U.S.*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *U.S. v. Holmes*, 111 F.3d 463, 467 (6th Cir. 1997).  The state appellate court found that no sham prosecution existed.

Riddle attempts to contradict the state court findings with evidence to establish an overriding federal interest in the state prosecution.  However, these arguments are irrelevant for the reasons stated below because a prerequisite federal acquittal had not occurred. Consequently it is unnecessary to discuss whether the state court decision was an unreasonable determination of the facts in light of the evidence presented for purposes of 28 U.S.C.  §2244(d)(2).

Riddle's arguments overlooked the temporal context of a sham prosecution as described in *Bartkus*.  In contrast to the companion case of *Abbate*, the Supreme Court did not voice the same concern in the reverse situation of a federal prosecution following a state conviction.  *Abbate*, 359 U.S. at 189-90.  The Supreme Court was nowhere concerned about "sham prosecution" in *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985), which case involved successive

4:03 CV 0670                                        6

prosecutions by different states for the same conduct.  The decision in *Heath* made it very clear that separate sovereign states could engage in multiple prosecutions that "had the offense arisen under the laws of one State and had petitioner been separately prosecuted for both offenses in that State, the second conviction would have been barred by the Double Jeopardy clause."  *Heath*, 474 at 87-88.  In contrast the sham prosecution under *Bartkus* occurs when there is an *acquittal* in a federal prosecution for conduct which is the basis for subsequent state prosecution.  Riddle was not acquitted in his prior federal trial.   The Supreme Court made it very clear that the purpose of the sham prosecution exception was to prevent "prosecution [becoming] merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against retrial of a federal prosecution after an acquittal."  *Bartkus*, 359 U.S. at 123-24.  Thus the "sham prosecution" exception will only eventuate with that sequence of events.  Another point made by the state appellate court was that the sham prosecution exception is so narrow that other courts have questioned whether it exists at all.  *Riddle*, 2001 WL 1647211*3 citing *U.S. v. Baptista-Rodriguez*, 17 F.3d 1354, 1362 (11th Cir. 1994).


        Accordingly, Riddle has not shown that the state court's application of *Bartkus* was contrary to nor an unreasonable application of the holding of *Bartkus* to his case.  Accordingly, there is no merit to this portion of the first ground since the state court decision was neither contrary to nor involved unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

4:03 CV 0670                                              7

The second aspect of the first ground concerns trial counsel's effectiveness.  The state appellate court applied the federal standard from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and found no prejudicial performance.  The court reasoned that "even if counsel had filed a motion to dismiss, the trial court would have properly denied that motion." *Riddle*, 2001 WL 1647211*5.

In *Strickland v. Washington*, the Supreme Court held that in order to establish ineffective assistance of trial counsel, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*.)  It is not enough to convince a federal habeas court that in its independent judgment the state court decision was incorrect.  Rather, Riddle must show that the state decision applied *Strickland* and *Wiggins* to the facts of the case in an objectively unreasonable manner.  See *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams v. Taylor*, 529 U.S. 362, 409, 410, 120 S.Ct. 1495, 1521-22, 146 L.Ed.2d. 389 (2000).  *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

Regardless of whether or not trial counsel should have filed a motion based on double jeopardy principles, since it would have been unsuccessful there was no prejudice.  Accordingly, with regard to the second aspect of his first ground, Riddle has failed to show that the state court decision was contrary to or an unreasonable application of clearly established federal law.

4:03 CV 0670                                          8

Ground Two:              Fourteenth Amendment, Fifth & Sixth Amendments.

Facts:                   Petitioner was denied a fair trial when the trial court
                         admitted audiotapes and written transcripts of the
                         audio tapes.  These unduly enhanced the audiotapes
                         and denied petitioner his right of confrontation and
                         cross-examination.  Petitioner states that on the tapes
                         various hearsay evidence was offered and petitioner
                         was not allowed to cross-examine witnesses against
                         him in violation of his rights under the Fifth and Sixth
                         Amendments.

Respondent analyzed this argument as it had been presented in the state court, as an

evidentiary question and a constitutional question concerning the confrontation clause.  The state

appellate court found the constitutional confrontation clause issue had been waived for lack of

proper briefing as required by Ohio App. R. 12(A) and 16(A).  Further the undersigned notes that

the confrontation clause argument was not "fairly presented" to the Ohio Supreme Court.[2]  Riddle

had argued only, "(1) admission of audiotapes and written transcripts to the jury without proper

foundations or the establishment of a conspiracy," under the third proposition of law to the Ohio

Supreme Court entitled "various errors in a trial, each individually seemingly insignificant or

reversible are reviewable collectively to determine whether a criminal defendant has had a fair trial."

(Memorandum in Support of Jurisdiction, Exhibit D at 10-11, Docket No. 9).  As a result of this

---

[2] Exhaustion principles dictate that petitioners challenging state convictions "fairly present" "the substance of the federal claim to the state's highest court," only in this way have the state courts been provided with a "fair opportunity" to apply controlling legal principles to the facts. *Picard v. Connor*, 404 U.S. 270, 275, 92  S.Ct. 509, 30 L.Ed.2d 438 (1971); *Anderson v. Harless*, 459 U.S. 4,6, 103 S.Ct. 276, 74 L.Ed. 2d 3 (1982); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 119 S.Ct. 1778, 144 L. Ed. 2d 1 (1999).

4:03 CV 0670                                        9

procedural default the confrontation clause arguments may be treated as "never having been raised"

which precludes them from being raised now.  See *Hutzler v. Haviland*, 2006 WL 1272553*2 (N.D.

Ohio May 5, 2006).


    "When a 'state prisoner has defaulted his federal claims in state court pursuant to an

independent and adequate state procedural rule, federal habeas review of the claims is barred unless

the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that

failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v.

Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Bonilla v. Hurley*,

370 F.3d 494, 497 (6th Cir. 2004), *cert. denied*, 543 U.S. 989, 125 S.Ct. 506, 160 L.Ed.2d 375

(2004).  When respondent argues that the ground has been defaulted due to a state procedural rule,

a four-part analysis must be performed in order to verify the validity of the procedural rule that

constituted the basis for the alleged procedural default:

> (1) whether there is a procedural rule that is applicable to the
> petitioner's claim and whether the petitioner failed to follow this rule;
> (2) whether the state courts actually enforced the state procedural
> rule; (3) whether the state procedural rule is an adequate and
> independent state ground to foreclose federal relief; and if so (4)
> whether the petitioner has established cause for his failure to follow
> the rule and prejudice by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); and see *White v. Schotten*, 201 F.3d 743,
749-51 (6th Cir. 2000), *cert. denied*, 531 U.S. 940, 121 S.Ct. 332, 148 L.Ed.2d 267 (2000);
*Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Carver v. Staub*, 349 F.3d 340, 346 (6th
Cir. 2003).

4:03 CV 0670                                     10

This state procedural rule was applicable to Riddle's claim and was actually enforced.  The only remaining question is whether the state rule was adequate and independent.  A procedural rule dismissing a  federal claim,  for a reason other than lack of merit, must  be both adequate and independent.  See *Fay v. Noia*,  372 U.S. 391, 398-99, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Douglas v. Alabama,*  380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Lee v. Kenma*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 810 (2002).  To be adequate, the state procedural rule must be both "firmly established and regularly followed" at the time it was applied by the state court.  See *Ford v. Georgia*, 498 U.S. at 424.  Rules that are firmly established and regularly followed will be adequate to foreclose review of the federal claim.  See *James v. Kentucky*, 466 U.S. 341, 348, 104 S.Ct. 1830, 80 L.Ed.2d 386 (1984); *Ford v. Georgia*, 498 U.S. at 422-24, *Lee*, 534 U.S. at 376; *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002). When judicial discretion enters into the application of the state procedural rule the "adequacy and independence" of the rule potentially is open to question.  See *Scott v. Mitchell*, 209 F.3d 854, 869 (6th Cir. 2000), *cert. denied*, 531 U.S. 1021 (2000); *Rogers v. House*, 144 F.3d 990, 993 (6th Cir. 1998).  Adequacy of the state procedural rule is itself a federal question."  See *Douglas v. Alabama*, 380 U.S. at 422.  The state appellate procedural rule did not require review of any merits and it had a discernable standard of application.  Finally, Riddle has failed to establish cause to excuse the default.  Accordingly, constitutional confrontation issue was procedurally defaulted.


In addition, there was a second procedural default due to lack of "fair presentation" to the Ohio Supreme Court.  Bypassing the Ohio Supreme Court results in procedural default which is both

4:03 CV 0670                                        11

an adequate and independent state ground that bars federal review.  See *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts."  *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

Finally with respect to the remaining state law claims, habeas relief cannot be granted simply on the basis of perceived error of state law.  See *Pulley v. Harris*, 465 U.S. 37, 481, 104 S.Ct. 1871, 1875, 79 L.Ed.2d 29 (1984); *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  No attempt was made to establish a denial of fundamental fairness.  Accordingly, review of the arguments raised in the second ground is barred due to procedural default and further the state claims are not cognizable in habeas corpus review.  Consequently, Riddle has shown neither a state decision which was contrary to or an unreasonable application of clearly established federal law.

| | |
|---|---|
| Ground three: | Sixth Amendment. |
| Facts: | Petitioner's counsel failed to to (sic) move for a change of venue by reason of overwhelming pretrial publicity which saturated Mahoning County. Petitioner's trial counsel failed to seek individual *voir dire* the jurors (sic) to secure a fair and impartial jury. Moreover, counsel failed to challenge the admissibility of evidence that was offered against him. |

The state trial court engaged in a lengthly discourse concerning the evidence of conspiracy, admission of transcripts and limiting instruction.  The state court found no error nor abuse of discretion.  Further, Riddle has not shown how the rulings on the state evidentiary questions denied

4:03 CV 0670                                        12

him a fair trial.  Especially given the finding by the state appellate court that there was sufficient

evidence introduced and independent proof of a conspiracy to allow hearsay statements in as

statements by a co-conspirator made during the course and furtherance of a conspiracy pursuant to

Evid. R. 801(B)(2)(e).


        Again the state appellate court applied the two-part test from *Strickland v. Washington* to this

situation and found that the first part of this allegation failed because defense counsel had in fact

filed a motion for change of venue; the method of *voir dire* utilized by trial counsel resulted in

impartial jury and finally that Riddle cannot argue the failure to challenge the admissibility of the

"snitch testimony" was deficient performance because such "snitch testimony" was inadmissible

evidence.  *Riddle*, 2001 WL 1647211*8.  As the state court explained in response to the following

argument, the "snitch testimony" is a question of credibility, not admissibility.  *Id.*  Nonetheless,

Riddle has failed to show the state court decision was either contrary to or an unreasonable

application of clearly established federal law nor has he shown there was unreasonable application

of the facts.


                Ground Four:            Fourteenth Amendment.

                Facts:                  The petitioner was denied due process of law when
                                        his conviction was secured through purchased
                                        testimony by the prosecution.  The prosecution
                                        secured the conviction in this case by entering into
                                        plea agreements with various witnesses which, in
                                        effect, purchased their testimony and caused them to
                                        give false testimony. Moreover, the suspect witnesses
                                        were vouched for by the prosecution and improperly
                                        enhanced their credibility by stating that these

4:03 CV 0670                              13

> witnesses were telling the truth and gave truthful
> testimony.

The state appellate court agreed that there had been state witness testimony procured by plea

negotiations and then explained:

> Prudent defense counsel will address the plea bargain in cross-examination
> in order to show possible bias on the part of the witness that might affect the
> witness' credibility.  See *State v. Simms* (1983), 9 Ohio App.3d 302, 9 OBR
> 549, 459 N.E.2d 1316.  The mere fact that a witness is testifying pursuant to
> a plea bargain does not mean the testimony is not credible.  The credibility
> of a witness is primarily an issue for the trier of fact to resolve.  *State v.
> Green* (2000), 90 Ohio St.3d 352, 357, 738 N.E.2d 1208, 1219.  We will not
> hold accomplice testimony procured via a plea agreement is *per se* false and
> perjured testimony.  Rather, we will leave that determination to the trier of
> fact in each particular case.
>
> Appellants also claim the prosecutors were guilty of misconduct by
> repeatedly vouching for the credibility of the accomplices who gave
> testimony linking Appellants to the crimes.  However, Appellants fail to
> reference any portion of the more than 2,300 pages of the transcript where
> this allegedly occurred and concede no objection was made to any alleged
> prosecutorial misconduct.  Because of Appellants' failure to either identify
> the portion of the record upon which they rely in alleging prosecutorial
> misconduct or object at trial, as discussed *supra*, App.R. 12 precludes us
> from addressing this assignment of error.  Appellants' fourth assignment of
> error is meritless.

*Riddle*, 2001 WL 16472211 at *8.

Riddle concedes in his traverse (Docket No. 23) the state court relied on Ohio App.R.

12(A)(2), which as explained before is an adequate and independent state procedural rule.  Riddle,

moreover, has not shown cause or prejudice to excuse the procedural default and consequently

Riddle has not shown that the state court decision was contrary to or an unreasonable application

of clearly established federal law nor an unreasonable determination of the facts.

4:03 CV 0670                                      14

Ground five:            Fourteenth Amendment.

Facts:                  Petitioner was denied a fair trial when the prosecutor
                        was allowed to ask leading questions of witnesses
                        which suggested the answer to be given.   These
                        witnesses were giving adverse testimony against
                        petitioner.  This type of testimony only required the
                        witness to agree with the prosecutor in answering the
                        question.

Respondent contends that this ground for relief does not begin to set forth a deprivation of

constitutional dimension.  The undersigned agrees  – there is no denial of fair trial simply due to

repetitive use of leading questions.  This ground is an attempt to engage the federal court in second

guessing the state court's ruling on the question of state evidentiary rules.  See *Jordan v. Hurley*,

397 F.3d 360, 362 (6th Cir. 2005).  However, as illustrated in *Jordan*, leading questions may impinge

on the right of confrontation.  See *Jordan v. Hurley*, 397 F.3d 360, 362 (6th Cir. 2005).  Riddle,

though, does not claim anything more than leading questions resulted in some unspecified

unfairness.  Consequently, the state court decision was neither contrary to nor an unreasonable

application of clearly established federal law.

Ground six:             Sixth and Fourteenth Amendments.

Facts:                  Petitioner was denied a fair and impartial jury.  The
                        trial was held in Mahoning County which had been
                        saturated with articles and information concerning
                        petitioner and the co-defendants at his trial.  The trial
                        should have been moved out of Mahoning County so
                        that a fair and impartial jury could have been seated
                        at the trial of the case.  This case was describe (sic) in
                        the media as a "mobbed trial" and was one of the
                        most publicized trials in the history in Mahoning
                        County and should have been moved from Mahoning
                        County.

4:03 CV 0670                                      15

The state appellate court upheld retaining trial in Mahoning Court, and based its decision on

*State v. Landrum*, 53 Ohio St.3d 107, 559 N.E.2d 710 (1990) and *State v. Treesh*, 90 Ohio St.3d 460,

739 N.E.2d 749 (2001).  These state decisions involve application of such federal precedent as

*Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d. 589 (1975); *Irvin v. Dowd*, 366 U.S.

717, 81 S.Ct. 6039, 66 L.Ed.2d 751 (1961) and *Nebraska Press Assn. v. Stewart*, 427 U.S. 539, 96

S.Ct. 2791, 49 L.Ed.2d 683 (1976).  In addition, the state appellate court did make direct reference

to decisions from the U.S. Supreme Court.  The state court reasoned that:

> . . . although Appellant's reference several statements made by *potential*
> jurors, they neglect to cite any instances where *seated* jurors displayed any
> impartiality.  Moreover, the record reflects nine out of forty-nine potential
> jurors did not have any recognition of the circumstances in this case.
>
> The only seated juror appellants specifically complain of is a Ms. Blackiston.
> This juror admitted she had heard about the case on the television and radio.
> However she went on to state, "I can't say until I hear what the lawyers are
> going to ---- how they're going to defend their client.  What are they going
> to say?  There had to be a lot of just hearsay on the radio."   She further
> explained, "I am not making a decision because of what I have heard on the
> radio, and that's the truth."   This juror confirmed she had not formed an
> opinion about appellants' guilt or innocence and that she could render a fair
> and impartial verdict based upon the law and the evidence.

*Riddle*, 2001 WL 1647211*11.

The state court rejected this claim and the decision was neither contrary to nor an reasonable

application of clearly established federal law, and it was not an reasonable determination of the facts.

Juror knowledge due to media coverage of the events and prior convictions does not presumptively

deprive a defendant of due process.  *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 44

L.Ed.2d 589 (1975).  "It is sufficient if the juror can lay aside his impression or opinion and render

a verdict based on the evidence presented at trial."  *Irvin* at 723; *Murphy* at 800; *Lockhart v.*

4:03 CV 0670                                     16

*McCree*, 476 U.S. 162, 177, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Patton v. Yount*, 467 U.S. 1025,

1037 and n. 12; 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); *Dobbert v. Florida*, 432 U.S. 282, 301, 97

S.Ct. 2290, 53 L.Ed.2d 344 (1977).  Further, the Sixth Circuit Court of Appeals has observed that

"there is no per se rule that mere exposure to media reports about a case merits exclusion of a juror."

*McQueen v. Scroggy*, 99 F.3d 1302, 1319 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257, 117 S.Ct.

2422, 138 L.Ed.2d 185 (1997).


          Under certain conditions, however, intensive media coverage may warrant a venue change.

Saturation of this sort, when proven, creates an atmosphere that requires application of what is

known as the *Rideau* principle of presumptive juror prejudice. *Rideau v. Louisiana*, 373 U.S. 723,

83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).  See also *Mayola v. Alabama*, 623 F.2d 992 (5th Cir. 1980),

rehearing denied, 628 F.2d 1354 5th Cir. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1986, 68

L.Ed.2d. 303 (1981).  The *Rideau* principle applies when a defendant has "adduce[d] evidence of

inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render

virtually impossible a fair trial by an impartial jury drawn from that community."  *Mayola* at 997.

To show that there was a need for venue change based on juror bias, Riddle must demonstrate that

media coverage had been so pervasive and prejudicial in nature that the coverage would render

jurors' professions of impartiality presumptively implausible.  See *Irvin*, 366 U.S. at 725-26; see

also *Patton v. Yount*, 467 U.S. 1025, 1031; 104 S.Ct. 2885; 81 L.Ed.2d 847 (1984).  Because "pre-

trial publicity, even pervasive, adverse publicity, does not inevitably lead to an unfair trial,"

defendants assume a great burden when attempting to prove this level of saturation.  *Nebraska Press*

*Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).  "Given that virtually

4:03 CV 0670                                      17

every case of any consequence will be the subject of some press attention... the *Rideau* principle is only rarely applicable." *Mayola* at 997.

As *Irvin* suggested, "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard" given today's "swift, widespread, and diverse methods of communication." *Id.*, 366 U.S. at 722-23. There was no evidence of presumptive prejudice that would require a venue change before the process of *voir dire*.

Riddle supports his argument referring to four of the members of the *voir dire* panel, Mr. Caspary, Mr. Malamisura and Mr. Staus who expressed a lack of impartiality, and Ms. Blackison's statements expressing that she would remain impartial. The evidence of pretrial publicity, and three members out of the panel of 49 who expressed an inability to remain impartial, certainly does not measure up to the standards set by the Supreme Court in *Irvin* to require transfer of venue. The arguments do not demonstrate media saturation, given that nine of the 49 prospective jurors had no prior knowledge of these events, which is nearly 20 percent. This fact alone refutes the type of saturation needed to sustain the *Rideau* principle.

Riddle next points out that the prospective panel heard the remarks from these three jurors. However, "individual *voir dire* is not a constitutional requirement in a highly publicized case." *Richie v. Rogers,* 313 F.3d 948, 962 (6th Cir. 2002), *cert. denied,* 540 U.S. 842, 124 S.Ct. 110, 1157 L.Ed.2d 76 (2003). *Mu'Min v. Virginia* also emphasized that the [Supreme] Court's cases have

4:03 CV 0670                                        18

stressed the wide discretion granted to trial courts in conducting *voir dire* in the area of pretrial

publicity. . . . the court [has been] careful not to specify the particulars by which [*voir dire*] could

be done." *Id.,* 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). In dicta, the Circuit

Court of Appeals did acknowledge that "individual *voir dire* might well avoid some of the problems

that develop in a group *voir dire* setting, in particular when the trial involves a charge of capital

murder." *Ritchie* at 962. Nonetheless, there is no Supreme Court precedent mandating individual

*voir dire*, so there is no outcome contrary to or involving an unreasonable application of federal law

in the present case.


Since the jurors who had expressed bias were removed, and since Riddle has not

demonstrated a level of coverage that was so prejudicial as to make it impossible for remaining

jurors to rely exclusively on the trial evidence to form a judgment, the Court of Appeals' decision

was not contrary to clearly established federal law, nor did it involve an unreasonable application

of federal law.


|  |  |
|---|---|
| Ground Seven: | Fourteenth Amendment. |
| Facts: | Petitioner was denied a fair trial. The cumulative effect of errors and prejudicial evidence and testimony offered against petitioner deprived him of fair trial. |

The state appellate court reasoned, on the basis of the state's doctrine of cumulative error,

that a conviction would be reversed due to a cumulative effect of errors during the course of the trial

when they deprived defendant of a constitutional right to a fair trial, citing *State v. DeMarco*,

4:03 CV 0670                                              19

31 Ohio St.3d 191, 509 N.E.2d 1256 (1987).  However, the state court pointed out that this doctrine

is not applicable in the event the appellant fails to establish multiple instances of harmless error

during the course of the trial.  The state appellate court concluded in Riddle's situation that the court

found no error, let alone harmless error and therefore the doctrine of cumulative error did not apply

in this case.


        Riddle does not identify what error he claims, but presuming he is referring to his prior six

grounds, he has established no error, much less cumulative error.  Moreover, the Sixth Circuit in

*Lorraine v. Coyle* observed that the U.S. Supreme Court "has not held that distinct constitutional

claims can be [aggregated] to grant habeas relief."  *Id.*, 291 F.3d 416, 418 (6th Cir. 2002), corrected

and rehearing denied, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947, 123 S.Ct. 1621, 155

L.Ed.2d 489 (2003), rehearing denied, 538 U.S. 1069, 123 S.Ct. 2243, 155 L.Ed.2d 1128 (2003).

See also *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1272,

154 L.Ed.2d 1026 ("Supreme Court has not held that constitutional claims that would not

individually support habeas relief may be cumulated in order to support relief").  Accordingly,

Riddle has not shown that the state court decision was contrary to or an unreasonable application

of clearly established federal law or an unreasonable determination of the facts.


        Ground Eight:                    Sixth Amendment.

        Facts:                           Petitioner was appointed counsel to represent him in
                                         his appeal.  However, petitioner's appellate counsel
                                         failed to cite certain portions of the record in support
                                         of claims of error.  Consequently, the Court of
                                         Appeals, in many instances, would not review the

4:03 CV 0670                                              20

claims of error because counsel did not cite to the record where the error occurred.  Thus, petitioner was denied his right to effective assistance of appellate counsel.

Ground nine:          Sixth and Fourteenth Amendment.

Facts:                Petitioner was denied a speedy trial.  His motion to dismiss was denied.  Moreover, court-appointed appellate counsel failed to present this issue on appeal and this also deprived petitioner of effective assistance of appellate counsel.

Riddle argues that he attempted to submit a brief on his own behalf to the Court of Appeals but the court ignored his submission.  Thereafter Riddle sought to reopen his appeal pursuant to Ohio App. R. 26(B) arguing ineffective assistance of appellate counsel with submission of his *pro se* appellate brief from 2001.

On September 29, 2003, the state appellate court denied the application as untimely (not filed within 90 days of journalization of the appellate judgment) noting that more than 21 months had passed after the decision was journalized and that Riddle had not even attempted to show good cause for the delay.  The state court considered the allegations made in support of the application and found that Riddle either should have been aware of the omission shortly  after the decision on direct appeal was journalized.   Riddle points out that the Court of Appeals mailed its decision to *former* appellate counsel.  Riddle's counsel discovered that a ruling had been issued and mailed to former appellate counsel in July 2005.

4:03 CV 0670                                    21

On July 18, 2005 current counsel for Riddle filed a motion to vacate which was denied on August 15, 2005 by the state appellate court.  The state court explained new counsel did not file an entry of appearance at the time he filed the application to reopen and therefore the Clerk of Courts appropriately mailed copies of the dispositive order to former counsel.  (Docket entry for 8-15-05 in Case 1999CA147, *State v. Riddle*).  Thereafter on September 26, 2005 Riddle filed his appeal to the Ohio Supreme Court.  He did not attempt to file a delayed appeal pursuant to Ohio St.Ct. Prac. R. II, §2(A)(4)(a) since that would be impossible because Subsection 4(b) specifically provides that delayed appeals are unavailable for appeals brought pursuant to Ohio App. R. 26(B).  Consequently the only matter before the Ohio Supreme Court was the question of the state appellate court's propriety of mailing its earlier denial of the Ohio App. 26(B) decision denying reopening.  The actual decision denying reopening for untimeliness  was not at issue.  Consequently, the situation presents a procedural default and lack of fair presentation to the Ohio Supreme Court. Consequently, the eighth and ninth grounds are not subject to federal review and Riddle has failed to show that there was a state decision contrary to an unreasonable application of clearly established federal law.

### *CONCLUSION AND RECOMMENDATION*

Following review of the arguments raised in the petition and applicable law, Jeffrey Riddle has not demonstrated that he was in custody pursuant to a state court judgment that resulted from a decision that was contrary to or involved in an unreasonable application of federal law as determined by the Supreme Court of the United States, or as a result of a decision based on unreasonable interpretation of the facts in light of the evidence in this state court proceeding.  See

4:03 CV 0670                                        22

28 U.S.C. §2254(d)(1) and (2).  Moreover, review of the record shows no error resulting in denial

or fundamental fairness or actual innocence.  Finally there has been no demonstrated need for an

evidentiary hearing and it is therefore recommended that Jeffrey Riddle's petition for habeas corpus

under 28 U.S.C. §2254 be denied and dismissed.

          s/James S. Gallas          

United States Magistrate Judge

     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified

time WAIVES the right to appeal the Magistrate Judge's recommendation.  See *U.S. v. Walters*, 638

F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: September 7, 2006